HOGAN LOVELLS US LLP
Stephanie Yonekura (Bar No. 187131)
Michelle Roberts Gonzales (Bar No. 292075)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
stephanie.yonekura@hoganlovells.com
michelle.roberts.gonzales@hoganlovells.com

Attorneys for Defendants
MEDICAL SUPPORT LOS ANGELES,
INC., and MSLA MANAGEMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Ex rel.* John M. Williams, Sr., M.D., M.P.H., Relator<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL SUPPORT LOS ANGELES, A MEDICAL CORPORATION, A/K/A MSLA; MSLA MANAGEMENT, LLC<br><br>Defendants. | Case No.  8:20-cv-00198-CBM-DFM<br><br>**DEFENDANTS MEDICAL SUPPORT LOS ANGELES, INC. AND MSLA MANAGEMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: Jan. 30, 2020<br>SAC Filed: Dec. 10, 2021<br><br>Date: February 22, 2022<br>Time: 10 a.m.<br>Courtroom: 8B<br><br>Honorable Consuelo B. Marshall<br><br>*[Filed Concurrently With Defendants' Notice and Motion to Dismiss SAC, Defs.' Application to Seal, Declaration of M. Roberts Gonzales, and Proposed Order]* |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**I.     INTRODUCTION** .................................................................... 1

**II.     BACKGROUND** ..................................................................... 3

    A.     Exams Ordered By VA To Expedite Processing Of Benefits Claims. ....... 3

    B.     Relator Alleges Fraud Based On Administrative Tasks. ............................ 5

    C.     Relator Alleges Fraudulent Inducement Based On Network Capacity Challenges Investigated By OIG ............................................................ 6

**III.    PROCEDURAL HISTORY** ......................................................... 7

**IV.    LEGAL STANDARD** ................................................................. 8

**V.     ARGUMENT** ........................................................................... 10

    A.     Relator's Amendment Does Nothing To Remedy The Pleading Deficiencies Identified By The Court Previously. .................................... 10

        1.     C-File Review Allegations Remain Insufficient. ................................ 12

        2.     Ancillary Test Allegations Remain Insufficient. ............................... 12

        3.     "Unlocked" DBQ Allegations Remain Insufficient. ........................... 13

        4.     Relator Has Not And Cannot Sufficiently Allege Materiality. ............ 14

    B.     Relator's Network Capacity Claims Must Be Dismissed Because He Is Not the Original Source. ..................................................................... 16

        1.     Network Capacity Allegations Are Barred By Prior Public Disclosure And Should Be Dismissed. ................................................................ 17

        2.     Relator Is Not The Original Source Of Allegations. .......................... 19

        3.     Capacity Allegations Do Not Satisfy Rules 8 And 9(b). .................... 21

**VI.    CONCLUSION** ...................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*U.S. ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*,
  816 F.3d 428 (6th Cir. 2016) ...................................................................... 20

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
  856 F.3d 696 (9th Cir. 2017) ................................................................. 18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 9, 21, 22

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ....................................................................... 9

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................ 9, 11, 21

*U.S. ex rel. Durkin v. Cty. of San Diego*,
  300 F. Supp. 3d 1107 (S.D. Cal. 2018) .............................................. 9, 16, 22

*U.S. ex rel. Fine v. Chevron, U.S.A., Inc.*,
  72 F.3d 740 (9th Cir. 1995) ....................................................................... 17

*Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
  559 U.S. 280 (2010) ............................................................................. 9, 17

*U.S. ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*,
  656 F. App'x 328 (9th Cir. 2016) ................................................................ 20

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) ...................................................................... 8

*U.S. ex rel. Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) .................................................................. 9, 22

*U.S. ex rel. Jones v. Sutter Health*,
  499 F.Supp.3d 704 (N.D. Cal. 2020) ........................................................... 20

*Kiewit Power Constructors Co. v. City of Los Angeles*,
  No. CV1602590ABGJSX, 2017 WL 6940508 (C.D. Cal. Nov. 28, 2017) .................................................................................................... 15

*Malhotra v. Steinberg*,
  770 F.3d 853 (9th Cir. 2014) ...................................................................... 20

*U.S. ex rel. Mateski v. Raytheon Co.*,
  816 F.3d 565 (9th Cir. 2016) .............................................................. 17, 19

*Matthews v. Ambridge*,
  No. 2:12-CV-01004-PMP, 2012 WL 6589264 (D. Nev. Dec. 17,
  2012) ............................................................................................................ 15

*U.S. ex rel. Reed v. KeyPoint Gov't Sols.*,
  923 F.3d 729 (10th Cir. 2019) .................................................................. 20

*U.S. ex rel. Rose v. Stephens Inst.*,
  909 F.3d 1012 (9th Cir. 2018) .................................................................... 8

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
  563 U.S. 401 (2011) .................................................................... 17, 18, 19

*United States v. Corinthian Colleges*,
  652 F. App'x 503 (9th Cir. 2016)............................................................... 21

*Winter ex rel. U.S. v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
  953 F.3d 1108 (9th Cir. 2020) .................................................................. 14

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ............................................................... 9, 14

*United States v. Molina Healthcare of Illinois, Inc.*,
  17 F.4th 732 (7th Cir. 2021)..................................................................... 22

*Adomitis ex rel. U.S. v. San Bernardino Mountains Cmty. Hosp. Dist.*,
  816 F. App'x 64 (9th Cir. 2020).............................................................. 22

*Universal Health Servs., Inc. v. U.S. and Mass. ex rel. Escobar*,
  579 U.S. 176 (2016) ........................................................................ 9, 10, 15

*Vatan v. QTC Med. Servs., Inc.*,
  812 F. App'x 485 (9th Cir. 2020)............................................................. 12

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
  827 F.3d 201 (1st Cir. 2016) ..................................................................... 20

*U.S. ex rel. Yagman v. Mitchell*,
  711 F. App'x 422 (9th Cir. 2018)................................................................ 19

iii

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITES ISO MOTION TO DISMISS SAC

**Statutes**

31 U.S.C. § 3729................................................................................*passim*

31 U.S.C. § 3730(e)(4) ........................................................3, 10, 17, 18, 19, 20, 21

Freedom of Information Act ........................................................................ 19

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)............................................... 9, 14

Federal Rules of Civil Procedure 8...........................2, 3, 8, 10, 11, 21, 22

Federal Rule of Civil Procedure Rule 9(b).....................2, 3, 8, 9, 10, 11, 14, 21, 22

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITES ISO MOTION TO DISMISS SAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Following the Court's order dismissing his first amended complaint, Relator John M. Williams ("Relator") amended his complaint a second time, in two principal ways: (1) he copied and pasted contract allegations already considered and rejected by the Court as a basis for his fraud claims, and (2) he added a claim based on the well-publicized and government-investigated struggle of Defendant Medical Support Los Angeles, Inc. ("MSLA") to subcontract with a sufficient number of examiners to handle a surge in requests.

But his core factual allegations remain unchanged.  Relator does not allege that MSLA failed to meet the vital quality and timeliness metrics set by the Department of Veterans Affairs ("VA").  And the revisions do nothing to remedy the fundamental defects found by the Court previously.  In fact, he has introduced new fatal flaws.  Relator has not and cannot plausibly or specifically plead fraud, nor can he meet the original source requirement of the False Claims Act, 31 U.S.C. § 3729.

Relator, a one-time job candidate in 2017, alleges that MSLA engaged in fraud by failing to adhere to the terms of its contracts with the U.S. Department of Veterans Affairs ("VA") – an allegation that is entirely dependent on Relator's implausible effort to transform routine administrative tasks into a medical "exam." Relator alleges that MSLA committed fraud by: (1) sending only relevant records, rather than veterans' entire claims files ("C-files") to the medical professionals who examined veterans; (2) pre-scheduling ancillary tests that were required by the VA in all but limited circumstances; and (3) leaving exam reports "unlocked," which permitted them to be edited theoretically.

The Court thoroughly reviewed those allegations, along with the full VA contracts, prior to dismissing the First Amended Complaint ("FAC").  *See generally* Order Dismissing FAC (ECF No. 79) ("Dismissal Order").  The Court

found Relator only alleged a contractual dispute, which is not cognizable under the False Claims Act ("FCA"), and used vague and conclusory allegations that were insufficient to satisfy the requirements of Federal Rules of Civil Procedure 8 and 9(b) ("Rule 8" and "Rule 9(b)"). *See id.* at 8:13-15, 11:8-14, 12:9-13, 13:2-4. Additionally, the Court found Relator failed to allege materiality sufficiently, as is required for an FCA case to proceed. *Id.* at 18:7-15, 19:12-20.

Being unable to address those defects, Relator instead just copied and pasted into the Second Amended Complaint, near verbatim, the arguments from his prior brief addressing the contractual provisions.[1] *Compare e.g.*, SAC, ¶ 55, 62-69, 71-74, 151-153 *to* Relator's Contract Resp. (ECF No. 42-2) at 1:23-2:11, 2:13-5:3, 5:24-6:20, 7:2-14, 7:19-8:23, 9:8-26, 10:4-18 (copying sections of Relator's Contract Resp. regarding C-files, ancillary tests, unlocked reports, and materiality into the SAC). The Court already considered those provisions as the alleged basis for Relator's fraud claims. *See generally* Dismissal Order. The SAC does nothing to address the defects already identified by the Court, and accordingly, Relator's FCA claims for nonconforming goods and implied false certification should be dismissed with prejudice.

Relator's new claim for fraudulent inducement, likewise, should be dismissed with prejudice because it, too, is fatally flawed and cannot be saved by amendment. Relator alleges that the VA would not have awarded contracts to MSLA in 2011 and 2016, years before Relator interviewed for a job with the company, if it had known that MSLA would be unable to quickly build and train a large enough examiner network or would use the administrative processes that were ultimately used. The allegations fail to meet the pleading standards of Rules 8 and 9(b), but even more fundamentally, the claim must be dismissed because Relator is not the original source of the network capacity allegations. *See* 31 U.S.C.

---

[1]     For the convenience of the Court, a redline comparing the SAC to the FAC is attached as Gonzales Decl., Exhibit 1.

§ 3730(e)(4)(B).  Under the FCA's public disclosure bar, "[t]he court <u>shall dismiss</u> an action or claim" when "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a government report, hearing, or audit unless the action is brought by the Government or the person bringing the action is an original source of the information.  31 U.S.C. § 3730(e)(4)(A) (emphasis added).  There is no allegation that the Relator is the original source of the information, and in fact, Relator admits on the face of the SAC that the allegations stem from a VA Office of Inspector General ("OIG") report.  The fraudulent inducement claim should be dismissed pursuant to the public disclosure bar, in addition to the failure to satisfy Rules 8 and 9(b).

Because Relator cannot satisfy the heightened pleading standard required for a fraud case and is not the original source of his new allegations, MSLA respectfully requests that the Court dismiss the entire action without further leave to amend.

## II.  <u>BACKGROUND</u>

The Court is familiar with the factual allegations and procedural background of this case, but Relator continues to allege that performance of "key tasks" – all of which were administrative in nature – resulted in a fraudulent scheme and that MSLA's inability to grow its provider network amounted to promissory fraud, or fraudulent inducement.  But his theories are refuted by the VA contracts[2] and other filings in this matter.

### A.  <u>Exams Ordered By VA To Expedite Processing Of Benefits Claims.</u>

The exams at issue here are a small portion of the overall process by which the VA decides whether a veteran is entitled to disability benefits.  *See* Req. for

---

[2]  Notably, Relator has admitted that he filed his Complaint without ever having seen the contracts. *See* Orr Decl. In Support of Relator's Application Under Rule 79.5.2.2 to File A Brief Response to ECF No. 39 (ECF No. 43), ¶ 6.

Judicial Not. ISO Mot. to Dismiss FAC ("RJN") (ECF No. 17-3)[3], Ex. 3 at 144
(showing overview of disability claims process).  A Medical Disability Exam
("MDE" or "exam"[4]) is only ordered if a VA claims processor determines more
information is needed to assess a veteran's claim.  *See* RJN, Ex. 3 at 143; Ex. 4 at
180.  It is not a medical exam in the traditional sense.  *See* RJN, Ex. 2 at 68
(describing physicians who perform veteran disability exams as not requiring a
license to treat patients).  No treatment, referrals to other medical providers, or
prescriptions are given by examiners.  RJN, Ex. 4 at 180, 182.  The exams are
similar to independent medical exams used for other types of disability claims.  *See*
RJN, Ex. 2 at 85.[5]

The VA, as the claims adjudicator, requires that the results of specific tests
and procedures be recorded on Disability Benefits Questionnaires ("DBQs"), which
are "designed to efficiently gather medical evidence" that is used by the VA to
determine whether the veteran is entitled to benefits.  *See* RJN, Ex. 2 at 72; *see also*
SAC, ¶ 45.  The exams are highly prescriptive.  Examiners must administer all tests
and procedures listed by the VA unless not medically advisable or declined by the
veteran.  *See* VA Contracts (ECF No. 39-1) at 24, 102, 146.  The diagnostic tests
associated with each type of exam are described in the VA contracts.  *Id.* at 78-86.
In fact, examiners are required to explain why any listed test – considered by the
VA to be a "standard required test necessary for the examined condition" – is <u>not</u>

---

[3]     In its Dismissal Order, the Court took judicial notice of Exhibits 1-5 filed in
support of Defendants' Motion to Dismiss the FAC.  *See* Dismissal Order at 4.

[4]     In the SAC, Relator substituted "MDE" for Compensation and Pension
Exam, or C&P Exam, but they are the same type of exam.  *See* SAC, ¶ 24.

[5]     Relator alleges that because past injuries and military service are considered
in an MDE, "there is no parallel in the usual patient-doctor medical exam," *see*
SAC, ¶ 26, but as another contractor explained in testimony to Congress, an MDE
is the military equivalent of an independent medical exam ordered by insurers and
third-party administrators for worker's compensation and other types of disability
claims.  *See* RJN, Ex. 2 at 85.

performed, and must obtain a waiver from the veteran if a test is declined.  *Id.*
at 374.

### B.     Relator Alleges Fraud Based On Administrative Tasks.

The VA awarded contracts to MSLA in 2011 and 2016, as well as a 2016
"bridge" contract covering a time gap between the contract periods.[6]  *See generally*
VA Contracts (ECF No. 39); SAC, ¶ 7.  The contracts had performance objectives
tied to specific timeliness and quality standards, such as appointment wait times,
the scheduling of exams and ancillary tests on the same day, completion of tests
indicated on the DBQs, and the total amount of time required to complete the
exams.  *See, e.g.*, VA Contracts, ECF No. 39-1 at 88-91 and ECF No. 39-3 at 1772-
75.  MSLA was required to locate and subcontract with examiners, schedule exams
(including ancillary tests), and handle the administrative work of filing completed
reports that met the VA's quality standards.  SAC, ¶¶ 50, 55; *see also* VA Contracts
(ECF No. 39-1) at 20.

The VA reviewed contractor performance based on quality and timeliness,
providing quarterly assessments of those metrics.  RJN, Ex. 3 at 147-149; *see also*
SAC, ¶ 27 n. 1 (describing quality as measured by use of the correct forms,
answering all DBQ questions, and using the correct billing codes).  If MSLA failed
to reach minimum targets for timeliness and quality, it was required to repay a
percentage of invoiced amounts, and if an individual exam report was returned by
the VA as deficient, MSLA was required to provide a substantial discount for the
exam.  *See* VA Contracts (ECF No. 39-2) at 29.

Relator does not allege that MSLA failed to meet the quality and timeliness
targets set by the VA.  Instead, he alleges that MSLA's performance of other "key
tasks" violated the terms of the contracts and resulted in the VA receiving
"worthless" or "non-conforming" exam reports.  SAC, ¶¶ 25, 34, 36.  The basis for

---

[6]     Performance under the 2016 contracts did not begin until approximately
September 2017, in part because of multiple bid protests.  *See* RJN, Ex. 3 at 145.

his factual allegations in the SAC is the exact same contract provisions that the Court already considered prior to dismissing the FAC.  *See* SAC, ¶ 55, 62-69, 71-74, 151-153; Relator's Contract Resp. (ECF No. 42-2) at 1:23-2:11, 2:13-5:3, 5:24-6:20, 7:2-14, 7:19-8:23, 9:8-26, 10:4-18.  Relator continues to allege that the "exam" includes administrative tasks that he deems "key tasks" – with no contractual or other authority indicating that the VA deemed them as such.

### C.   Relator Alleges Fraudulent Inducement Based On Network Capacity Challenges Investigated By OIG.

Relator first learned about MSLA when he was interviewing for a job there in October 2017.  SAC, ¶¶ 97-98.  He was not involved with MSLA's bid for the 2011 or 2016 contracts, and indeed, has not alleged that he had – or could have – any knowledge of MSLA's contract bidding process or intent at the time.  *See id.* But he alleges the 2016 contracts were fraudulently induced because MSLA misrepresented "its capacity to provide a network of properly-credentialled examiners" and that completed DBQs would meet VA specifications.  SAC, ¶¶ 183, 191-92.  His allegation is based not on an event or fact prior to 2016 but on MSLA's inability to "handle a large volume of additional examination requests," meet the VA's target 60- to 90-day ramp-up, recruit new examiners, and handle surges in caseload after the 2016 contracts were implemented.  *Id.*, ¶ 184.  "[A]s summarized by the OIG," MSLA had difficulty adding examiners to its network quickly enough to handle additional exams after the contracts were awarded.  *Id.*, ¶ 186.

But MSLA's network capacity issues were neither unique to MSLA nor are they new revelations.  *See* RJN, Ex. 3 at 156-57 (describing more than one contractor that was unprepared to perform all exams, particularly in rural locations). The OIG investigated MSLA's provider capacity issues in January 2018.  *See*

Gonzales Decl., Ex. 2[7].  It issued a report in June 2019, concluding that there had been contract performance issues, but ***no fraud***.  *See id*. at 21 (emphasis added).

The OIG investigation was prompted by a hotline complaint that MSLA "lacked the capacity to complete the volume of disability exams" requested by the VA.  *Id.* at 1.  The OIG interviewed numerous people (including the hotline complainant),[8] conducted a site visit at MSLA, and analyzed canceled exams.  *Id.* at 5.  It also reviewed "regulatory requirements, documentation, and actions applicable to the MSLA solicitation and awarding" of the contracts.  *Id.*

The OIG specifically "assessed the risk [of] fraud, violations of legal and regulatory requirements, and [potential] abuse," and it reviewed proposals "to ensure they met selection requirements."  *Id.* at 20.  The OIG did not find "***any instances of fraud or potential fraud.***"  *Id*. at 21 (emphasis added).  Rather, the OIG viewed the capacity issues as a contractual matter.  *See id.* at 5-6 (describing "modifying the contract" as the remedy to MSLA's provider network issues).  Likewise, an official from the VA testified before a U.S. House Subcommittee in November 2018 that the parties reached "a settlement to mitigate nonperformance."  Gonzales Decl., Ex. 3 at 8.  Under the modification, MSLA wound down its performance in March 2018 and paid the VA $4.8 million "for costs associated with obtaining alternate contractors to schedule and complete the exams."  *Id.*; Ex. 2 at 8.

## III.   **PROCEDURAL HISTORY**

Relator filed his original Complaint on January 30, 2020.  The Government declined to intervene, and the Complaint was unsealed on July 31, 2020.  (ECF No.

---

[7]      MSLA requested judicial notice of the OIG report and congressional testimony on the issue concurrently with its Opposition to Pl.'s Motion to Amend, *see* ECF No. 75.  The Court granted the request, *see* Dismissal Order at 5:6-18.  But for the Court's convenience, the documents are being re-filed with this motion.

[8]      The identity of the individual was not disclosed by the OIG, but there is no allegation that Relator was the hotline caller.  *See generally* SAC.

7

12.)  Following MSLA's first Motion to Dismiss the Complaint on October 2, 2020, Relator amended, filing a First Amended Complaint on October 20, 2020.  (ECF No. 19.)  MSLA moved to dismiss Relator's FAC on December 3, 2020, because even with the amendment, the complaint still failed to meet the plausibility and specificity requirements of Rules 8 and 9(b).  (ECF No. 24.)

The Court ordered MSLA to file the VA contracts on February 26, 2021. (ECF No. 31.)  MSLA filed the contracts and their amendments, which covered more than 4,000 pages, on March 19, 2021.  (ECF No. 37.)  The Court subsequently permitted the Parties to file supplemental briefs regarding those contracts, which Relator admitted he did not have, much less review, before he filed his first two complaints.  (ECF Nos. 42, 47, 53.)  On November 29, 2021, the Court granted MSLA's Motion to Dismiss the FAC, finding Relator had failed to state a claim upon which relief could be granted, but the Court gave Relator leave to amend.  (ECF No. 79.)  Relator filed his SAC on December 10, 2021 (ECF No. 81), copying large portions of his supplemental brief regarding the contracts into the operative complaint, *see* SAC ¶¶ 55, 62-69, 71-74, 151-153, and adding a fraudulent inducement claim based on the OIG report, *see* SAC, ¶¶ 179-198.

## IV.   **LEGAL STANDARD**

The FCA prohibits knowingly presenting or causing to be presented false or fraudulent claims to the government, 31 U.S.C. § 3729(a)(1)(A), and making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim, 31 U.S.C. § 3729(a)(1)(B).  An FCA claim requires: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that is material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) (quoting *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).

Claims under the FCA may be made for nonconforming goods or services, *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010), implied

certifications in requests for payment, *see Universal Health Servs., Inc. v. U.S. and Mass. ex rel. Escobar*, 579 U.S. 176, 190 (2016), and fraudulent inducement of a government contract, *see U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  Fraudulent inducement, or promissory fraud, is similar to false certification but is different "in a temporal sense," meaning the contractor must not have intended to perform at the time the promise was made in order to be liable under the FCA.  *U.S. ex rel. Durkin v. Cty. of San Diego*, 300 F. Supp. 3d 1107, 1117 (S.D. Cal. 2018).

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), an FCA plaintiff must plead a plausible entitlement to relief with enough particularity to satisfy the heightened pleading standards set by Rule 9(b) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See Ebeid*, 616 F.3d at 998; Fed. R. Civ. P. 9(b) ("In alleging fraud … a party must state with particularity the circumstances constituting [the] fraud").  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Relator must identify "'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'"  *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  He must also allege facts showing that the purported misrepresentation was material to the Government's decision to pay a claim.  *Universal Health Servs.*, 579 U.S. at 190 n. 6.

Moreover, Relator must be the original source of the FCA allegations. "[W]hen the relevant information has already entered the public domain" through channels like federal reports and congressional hearings, the claim must be dismissed.  *See Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010).  "The court shall dismiss an action or claim … if

substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed … in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation … unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A).  To qualify as an "original source," Relator must either: (1) "voluntarily disclose[] to the Government the information on which allegations or transactions in a claim are based" prior to the public disclosure or (2) voluntarily provide information based on "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."  *See* 31 U.S.C. § 3730(e)(4)(B).

## V.   <u>ARGUMENT</u>

What the Court previously recognized remains true: Relator has at most alleged non-material non-adherence to the VA contracts, not a cognizable FCA claim.  *See* Dismissal Order at 8:13-15, 11:8-14, 12:9-13, 19:12-20.  Copying the same allegations, already considered by the Court, into the SAC does nothing to satisfy the requirements of Rules 8 and 9(b).  Moreover, his capacity-related claim must be dismissed because even if it met the heightened pleading standard of Rule 9(b), which it does not, Relator is not the original source within the meaning of 31 U.S.C. § 3730(e)(4)(B).  The SAC should be dismissed.

### A.   <u>Relator's Amendment Does Nothing To Remedy The Pleading Deficiencies Identified By The Court Previously.</u>

In dismissing the prior complaint, the Court acknowledged that the Supreme Court has repeatedly held that alleged contractual noncompliance or "garden-variety breaches of contract" are not cognizable under the FCA.  *Escobar*, 136 S. Ct. at 2003 (citing *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 673 (2008)).  Contract claims simply "are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the FCA."  *Cafasso*, 637 F.3d at 1057 (citing *United States ex rel. Wilson v. Kellogg*

*Brown & Root, Inc.*, 525 F.3d 370, 383 (4th Cir. 2008)).  In order to satisfy Rules 8 and 9(b), the allegations must specify the "particular circumstances" of a "discrete fraudulent statement," not just allege "unsavory conduct."  *Cafasso*, 637 F.3d at 1057-58.  The Court specifically held:

(1) Relator's allegation that MSLA failed to provide examiners with the entire C-File "is a contractual dispute that is not cognizable under the FCA."  *See* Dismissal Order at 8:13-15.

(2) Relator's allegation that MSLA was improperly "ordering" ancillary tests because it was anticipatorily scheduling tests was a contractual dispute, which is "'not the same as fraudulent conduct' as required under the FCA," *id.* at 11:8-14, particularly because the contracts provided that "[a]ll test and procedures specifically required in the examination worksheets shall be conducted unless not medically advisable or declined by the individual examined," *id.* at 10:19-21.

(3) Relator's conclusory allegation that DBQs "could be" edited does not satisfy Rule 9(b)'s heightened pleading standard.  *Id.* at 12:8-23.  The availability of editing did not make the reports "worthless goods"; nothing in the contracts prohibited MSLA staff from editing the reports, assuming such editing was done.  *Id.* at 14:5-16:5.

(4) Relator failed to sufficiently allege materiality because nothing that he alleged, including the other cases cited, suggested that the administrative tasks were so "central to the claims that the Government would not have paid these claims if it had known of these violations."  *Id.* at 19:12-20.

Relator added a lot of paragraphs to the SAC, mostly by copying and pasting portions of prior briefing, but he has not and cannot remedy these fundamental problems.  He continues to try to spin his idiosyncratic and unsupported interpretation of the VA contracts into a fraudulent scheme, disregarding both the applicable law and this Court's prior Dismissal Order.

### 1.    *C-File Review Allegations Remain Insufficient.*

Relator continues to allege that only "**pertinent records**" were given to the examiners in an effort to ensure exams were completed more quickly.  *See* SAC, ¶¶ 91(a), 141-142 (emphasis in original).  He still fails to offer any plausible explanation for why an examiner could not complete an exam without records that had nothing to do with the claimed condition.  Different DBQs were used for different conditions, and the same veteran could have multiple claimed conditions. RJN, Ex. 2 at 102-103.

The VA required for years only that the whole C-file be provided to the examiner "if applicable," and it did not eliminate the "relatively vague" language regarding C-file review until near the end of MSLA's performance, *see* SAC  ¶¶ 62-67; Relator's Resp. to VA Contracts at 2:13-6:3.  Moreover, the VA expressly informed at least one other contractor that reviewers were not required to review every page of the C-files.  *See Vatan v. QTC Med. Servs., Inc.*, 812 F. App'x 485, 486 (9th Cir. 2020) (finding allegations regarding failure to review complete C-files were not actionable under the FCA).  The allegations regarding C-file review, as the Court previously found, are nothing more than those of contractual nonadherence, and as a result, they cannot support an FCA claim.

### 2.    *Ancillary Test Allegations Remain Insufficient.*

Relator continues to allege that MSLA "ordered" tests because it was scheduling tests, as required by its contracts.  *See* SAC, ¶¶ 50, 67-69 (prohibiting scheduling prior to the exam only where the DBQ requires that the veteran be seen by the examiner first); Relator's Resp. to VA Contracts at 5:24-6:20 (same); *see also* SAC, ¶¶ 102-103 (showing MSLA documents indicating "required tests" were scheduled).  He continues to ignore contractual provisions that required that nearly all exams and tests be scheduled on the same day to expedite completion of the reports and to minimize the burden on veterans.  *See* VA Contracts (ECF No. 39-1) at 88-91.

Relator did add an allegation that the MSLA documents on which he relied for his "ordering" claim (despite the plain use of the term "scheduling") were "proprietary internal company documents," *see* SAC, ¶ 100.  But by his own account, the Power Point presentations and flow charts were being forwarded and sent around among non-MSLA employees, including Plaintiff who was a job applicant, not a company insider.  *Id*.  And in any event, there was no reason to hide the anticipatory scheduling.  Other contractors also scheduled diagnostic tests prior to exams to improve timeliness.  *See* RJN, Ex. 2 at 92.  One contractor, in fact, submitted a workflow showing pre-scheduling of diagnostic tests with its congressional testimony.  *Id.*

Even if the timing of the test scheduling was somehow inconsistent with the VA contracts, Relator fails to allege that any unrequired tests were administered.  The DBQs and contracts listed ancillary tests that were required by the VA for an adequate exam, and the contracts provided that <u>all</u> tests and procedures "specifically required in the examination worksheets shall be conducted unless not medically advisable or declined by the individual examined."  VA Contracts (ECF No. 39-1) at 24, 78-86, 146, 374.  Relator does not allege that the scheduled tests were not medically advisable or declined by the veteran, and given the requirements of the contracts and DBQs, it makes perfect sense that examiners rarely opted out of pre-scheduled tests.  SAC, ¶¶ 115-116.  Relator has again failed to plead fraud plausibly based on the scheduling of ancillary tests.

### 3.    *"Unlocked" DBQ Allegations Remain Insufficient.*

Relator continues to allege exam reports were not "locked" after submission and could be edited, including to add test results.  SAC, ¶ 91(c).  He provides no details regarding whether revisions were made with examiner authorization, whether the edits were substantive or mere transcription of results, or whether the addition of test results – assuming such edits were actually made – affected the conclusion of even a single exam report.  *Cf. Winter ex rel. U.S. v. Gardens Reg'l*

13

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1115 (9th Cir. 2020) (detailing 65 patient admissions, "identified by the admitting physician, patient initials, chief complaint, diagnosis, length of admission, the Medicare billing code, and the amount billed to Medicare").

Rather than try to meet the heightened pleading standard of Rule 9(b), Relator keeps revising the factual allegations to make them less specific in an effort to disguise their implausibility.  In his original Complaint, Relator alleged that the DBQs could be changed "if any mistakes were discovered," *see* Compl., ¶ 47(c).  In the FAC, he indicated that changes could be made if they were "deemed necessary and appropriate." *See* FAC, ¶ 50(c).  Apparently recognizing that "necessary and appropriate" changes and removing "mistakes" do not make a fraudulent scheme, Relator deleted that language in the SAC, and he deleted the allegation that the Chief Medical Officer "never changed, edited, or altered" an exam report – which the Court cited when it determined the factual allegations regarding the unlocked DBQs were implausible.  *See* Gonzales Decl., Ex. 1 at ¶¶ 91(c), 114-115; Dismissal Order at 13:1-5.  But Relator cannot survive a motion to dismiss pursuant to Rule 12(b)(6) by making his allegations less specific; the allegations must be specific and plausible.  *See Ebeid*, 616 F.3d at 998.  He must either (1) identify representative examples of false claims to support every allegation or (2) allege particular details of a scheme to submit false claims "paired with reliable indicia that lead to a strong inference that [false] claims were actually submitted" for a nonconforming goods claim. *Id.* at 998–99.  He has done neither.

### 4. *Relator Has Not And Cannot Sufficiently Allege Materiality.*

Even if Relator could sufficiently allege that MSLA's procedures were inconsistent with the VA contracts, he still fails to allege materiality sufficiently. The materiality standard, defined in the statute as having a "natural tendency to influence, or be[ing] capable of influencing, the payment or receipt of money or property," is "demanding" and "rigorous."  31 U.S.C. § 3729(b)(4); *Universal*

*Health Servs.*, 579 U.S. at 194.  "The False Claims Act is not 'an all-purpose antifraud statute,' … or a vehicle for punishing garden-variety breaches of contract or regulatory violations."  *Id.*  A misrepresentation is not material if the contractual noncompliance is minor or insubstantial, nor is it "material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."  *Id.*

As the Court found in its order dismissing the FAC, Relator's allegations that the Government refused to pay claims for exams and treatment by unlicensed individuals are not a plausible basis for alleging the materiality of the administrative tasks alleged by Relator.  Dismissal Order at 18:7-15.  Relator offered no factual allegations to support his claim that the so-called "key tasks" were part of the "exams" and could not be completed by anyone other than the examiner.  *Id.* at 19:12-16.

In the SAC, Relator adds paragraphs, but no new factual allegations to support his claim of materiality.  He merely copied and pasted portions of his supplemental briefing on the VA Contracts, *compare* SAC, ¶¶ 151-153 to Relator's Resp. to VA Contracts at 9:7-10:18, and improperly added argument based on his interpretation of those contracts, *see* SAC, ¶¶ 153-158.  The Court already considered and rejected his argument that the cited contractual provisions were sufficient to allege materiality in this case.  *See* Dismissal Order at 19:12-16.  And the Court should simply ignore his legal arguments in the SAC on the ground that they are surplusage and not the proper subject of a pleading.  *See Matthews v. Ambridge*, No. 2:12-CV-01004-PMP, 2012 WL 6589264, at *2 (D. Nev. Dec. 17, 2012) (holding that "a pleading is not the place for extensive legal argument, 'special notes' to the Court, and addenda")*; see also Kiewit Power Constructors Co. v. City of Los Angeles*, No. CV1602590ABGJSX, 2017 WL 6940508, at *2 (C.D. Cal. Nov. 28, 2017) (incorporating by reference prior order dismissing claims

where plaintiff's "additional 'facts' … primarily consist of legal arguments" previously considered).

Relator's materiality allegations are based solely on his idiosyncratic reading of the VA contracts. *See* SAC, ¶¶ 151-178.  He continues to allege, without any basis, that the "in-person" portion of the exam is not an "exam" within the meaning of the VA contracts. *Cf.* SAC, ¶¶ 25, 44, 162 (describing the "exam" as requiring "stringent clinical requirements").  He continues to implausibly argue that the signature and credential requirements for the exam reports demonstrate that administrative tasks – which he alone has deemed "key" – were material to the Government. *See* SAC, ¶¶151-152.  Indeed, he asks the Court to accept his unsupported allegations of materiality, even though the VA itself utilizes "administrative support staff necessary to administer" exams, not just licensed medical staff. *See* RJN, Ex. 2 at 67.  And he ignores that the contracts themselves identified what was material: timeliness and quality measures like appointment wait times, same-day scheduling of exams and tests, and completion of required tests. *See, e.g.*, VA Contracts, ECF No. 39-1 at 88-91 and ECF No. 39-3 at 1772-75.

Relator's claims for non-conforming goods (Count 1) and implied certification (Count 2) should be dismissed with prejudice.

## B.  Relator's Network Capacity Claims Must Be Dismissed Because He Is Not the Original Source.

Relator alleges fraudulent inducement based on the alleged "key tasks" described above and because MSLA was ultimately unable to locate and train a sufficient number of examiners to handle a surge in VA caseloads.  The portion of the claim based on the alleged "key tasks" should be dismissed for the reasons described above and because Relator has no basis for allegations regarding MSLA's intent at the time of contracting. *See Durkin*, 300 F. Supp. 3d at 1117 (describing fraudulent inducement as similar to false certification except that the alleged misrepresentations must occur <u>at the time of contracting</u>).  But the fraudulent

1    inducement claim should also be dismissed because the capacity allegations are

2    substantially the same as those publicly disclosed by the OIG and in a

3    congressional hearing.  Relator is not the original source of them.  *See* 31 U.S.C.

4    section 3730(e)(4)(A)-(B).

5           **1.**       ***Network Capacity Allegations Are Barred By Prior Public***

6                      ***Disclosure And Should Be Dismissed.***

7         The False Claims Act is intended to encourage insiders privy to fraud on the

8    Government to "blow the whistle."  *U.S. ex rel. Fine v. Chevron, U.S.A., Inc.*, 72

9    F.3d 740, 742 (9th Cir. 1995).  It is not a vehicle for parasitic lawsuits based on

10   information already in the possession of the Government.  *Graham Cty. Soil &*

11   *Water Conservation Dist.*, 559 U.S. at 294–95.  Congress specifically erected a bar

12   against lawsuits based on publicly disclosed information to "discourage[]

13   opportunistic plaintiffs who have no significant information to contribute of their

14   own."  *See id.*; *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 413

15   (2011) (explaining that the public disclosure bar prevents opportunistic relators

16   from using the government's own information to "reap a windfall" under the FCA);

17   *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016) (holding the

18   public disclosure bar is intended to discourage litigation by plaintiffs "who have no

19   significant information of their own to contribute").  District courts must dismiss

20   *qui tam* suits "when the relevant information has already entered the public domain

21   through certain channels."  *See Graham Cty. Soil & Water Conservation Dist.*, 559

22   U.S. at 285.

23        Pursuant to the so-called public disclosure bar, courts "shall dismiss" a claim

24   unless opposed by the Government "if substantially the same allegations or

25   transactions as alleged in the action or claim were publicly disclosed" in a

26   congressional or other federal report, hearing, audit, or investigation unless the

27   plaintiff is an original source of the information.  31 U.S.C. § 3730(e)(4)(A).  To be

28   an original source, a *qui tam* plaintiff must either: (1) voluntarily disclose to the

Government the information on which allegations or transactions in a claim are based <u>prior to</u> the public disclosure or (2) voluntarily provide information based on "knowledge that is <u>independent of and materially adds</u> to the publicly disclosed allegations or transactions."  *See* 31 U.S.C. § 3730(e)(4)(B) (emphasis added).

Relator cannot satisfy either requirement.  His allegations regarding MSLA's inability to build its network quickly enough to absorb a significant number of additional VA exams were publicly disclosed years ago in a Government investigation and report, as Relator plainly states in his SAC.  *See* SAC, ¶ 186.   He did not voluntarily disclose the allegations or transactions prior to the OIG report, nor did he provide information that is "independent of" *or* "materially adds" to "publicly disclosed allegations or transactions."  *See* 31 U.S.C. § 3730(e)(4)(B). Relator plainly admits that he is drawing on existing Government reports for his allegations.

The public disclosure bar precludes claims based on "substantially the same allegations or transactions" as those that have been disclosed in Government reports and investigations.  31 U.S.C. § 3730(e)(4)(A).[9]  The phrase "allegations or transactions … suggests a wide-reaching public disclosure bar."  *Schindler*, 563 U.S. at 408.  "Allegations" refer to direct claims of fraud.  *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 703 (9th Cir. 2017).  "Transactions" has a flexible meaning that could refer to "many different types of business dealings," *see Schindler*, 563 U.S. at 408, but the Ninth Circuit has interpreted it to mean the "facts from which fraud can be inferred."  *Amphastar Pharms. Inc.*, 856 F.3d at 703.  The publicly disclosed information need not make reference to the FCA, make an explicit allegation of fraud, or contain every detail to constitute a disclosure.  *Id.* at 704; *Mateski*, 816 F.3d at 571.  If a relator's allegations are substantially similar

---

[9]     In 2010, Congress revised some portions of the statute, including altering the bar from actions "based upon the public disclosure of allegations or transactions" to actions and claims "if substantially the same allegations or transactions" were publicly disclosed.  *See* 31 U.S.C. § 3730(e)(4)(B).

to a prior public disclosure, they are barred by 31 U.S.C. § 3730(e)(4).  *Id.* at 573.

"[W]hen a critical mass of the underlying facts or of the allegations in the *qui tam* complaint have been disclosed prior to the *qui tam* complaint being filed, the public disclosure bar applies."  *Amphstar,* 856 F.3d at 703-704.

In this case, Relator's network capacity allegations are not just substantially similar but essentially the same as the allegations and transactions described and investigated by the OIG.  *See* SAC, ¶ 186 (quoting directly allegations "summarized by the OIG").  Relator alleges MSLA misrepresented its preparedness to handle a surge in caseloads because it could not add examiners quickly enough. *Id., ¶ 184.*  But the OIG thoroughly investigated MSLA's network capacity struggles and issued a report regarding its findings in June 2019.  *See* Gonzales Decl., Ex. 2.  The OIG, a government agency, publicly disclosed both its investigation and report.  *Id.*  Additionally, Congress had public testimony that addressed MSLA's inability to add sufficient capacity to complete VA exams.  *See* Gonzales Decl., Ex. 3 at 8 (describing settlement between VA and MSLA to "mitigate nonperformance" under the contracts).  The allegations and transactions on which Relator's network capacity claim rests were publicly disclosed in a congressional hearing and a federal report long before Relator made his fraudulent inducement claim.  *See* 31 U.S.C. § 3730(e)(4)(A); *see also U.S. ex rel. Yagman v. Mitchell*, 711 F. App'x 422, 423 (9th Cir. 2018) (finding media reports and declassified portions of a Senate Report constituted public disclosure); *Schindler Elevator Corp.*, 563 U.S. at 410-11 (finding records obtained through the Freedom of Information Act are covered by the public disclosure bar).  The network capacity allegations have been publicly disclosed.

### 2.    *Relator Is Not The Original Source Of Allegations.*

Because the allegations and transaction have been publicly disclosed, the claim must be dismissed because Relator is not the "original source."  *See* 31 U.S.C. § 3730(e)(4)(B).  He only could qualify as the original source if he either

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITES ISO MOTION TO DISMISS SAC

voluntarily disclosed the information prior to the public report or provided information that is "independent of and materially adds" to the public report.  *See* 31 U.S.C. § 3730(e)(4)(B).  He did neither.

The OIG investigation was prompted by a hotline complaint, and the caller was interviewed by the OIG.  *See* Gonzales Decl., Ex. 2 at 5.  There is no allegation that Relator was the hotline caller or otherwise disclosed the information to the Government prior to the public disclosure in 2018.  *See generally* SAC.

Moreover, he has no "independent" knowledge and makes no material addition with his claim.  The requirements for independent knowledge and a material addition are stringent.  "Independent knowledge ordinarily means knowledge that preceded the public disclosure."  *See Malhotra v. Steinberg*, 770 F.3d 853, 860 (9th Cir. 2014) (holding relators did not have independent knowledge, even though their complaint initiated a government investigation because their theory of fraud was developed from a deposition taken by the government investigator).  The requirement that an original source also "materially add" to a public disclosure likewise sets a "rigorous" threshold.  *U.S. ex rel. Jones v. Sutter Health*, 499 F.Supp.3d 704, 717-18 (N.D. Cal. 2020).  "Allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud–they must add value to what the government already knew."  *U.S. ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331–32 (9th Cir. 2016); *see also U.S. ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016) (holding relator must have "information of such a nature that knowledge of the item would affect a person's decision-making, is significant, or is essential"); *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016) (same); *U.S. ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 756 (10th Cir. 2019) (same).  In other words, an original source must have truly independent knowledge <u>and</u> offer

significant or essential, decision-altering information to avoid dismissal under the public disclosure bar.

Relator has not alleged any independent knowledge or material addition to the publicly disclosed information regarding MSLA's lack of network capacity.  At most, Relator has added allegations that a former employee in a breach-of-contract lawsuit (in which he sought a percentage of MSLA's VA contract earnings) made allegations about MSLA's lack of capacity.  *See* SAC, ¶ 187.  That information is neither independent, nor a material addition.  *See* 31 U.S.C. § 3730(e)(4)(B)(2); *see also United States v. Corinthian Colleges*, 652 F. App'x 503, 504-05 (9th Cir. 2016) (finding the possession of a report related to publicly disclosed allegations was insufficient to make the relators an original source).  Relator is not the original source, and therefore, his claim for fraudulent inducement based on MSLA's lack of capacity is barred by the prior public disclosure.

His capacity allegations are precisely the kind of parasitic claims that the public disclosure bar is intended to prevent.  The fraudulent inducement claim should be dismissed pursuant to 31 U.S.C. § 3730(e)(4).

### 3.  *Capacity Allegations Do Not Satisfy Rules 8 And 9(b).*

Even if Relator somehow could allege that he was an original source, his capacity allegations are fundamentally flawed because they do not satisfy the requirements of Rules 8 and 9(b).  As explained above, Relator must plead fraud both plausibly and with specificity.  *See* Fed. R. Civ. Proc. 8, 9(b); *Iqbal*, 556 U.S. at 678; *Cafasso,* 637 F.3d 1047, 1054-55 (9th Cir. 2011).  Both the OIG investigation and Relator's allegations destroy any claim to plausibility for Relator's claims based on capacity issues.

First, the OIG conducted a full investigation and looked for indicia of fraud.  *See* Gonzales Decl., Ex. 2 at 20.  It interviewed numerous people, conducted a site visit at MSLA, and analyzed canceled exams.  *See id.* at 5.  It also reviewed "regulatory requirements, documentation, and actions applicable to the MSLA

solicitation and awarding" of the contracts.  *Id.*  It specifically assessed "the risk of fraud," violations of law and regulations, and potential abuse during its investigation of MSLA.  *Id*. at 20.  The OIG found no instances of "fraud or potential fraud."  *Id.* at 21.  Relator, nevertheless, asks the Court to find plausible his proposed allegations based on the OIG investigation, while conveniently ignoring that the same investigation found no fraud.

Second, in order to plead promissory fraud, Relator must plausibly and specifically plead the promises were "false when made."  *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  Promissory fraud is similar to false certification but is different "in a temporal sense."  *Durkin*, 300 F. Supp. 3d at 1117.  The contractor must not have intended to perform <u>at the time the promise was made</u> in order for Relator to make a claim for promissory fraud under the FCA.  *See id.*  Claims of fraudulent inducement "require the plaintiff to show that the defendant never intended to perform the promised act that induced the government to enter the contract."  *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 741 (7th Cir. 2021).

Relator claims MSLA had actual knowledge that it would not perform the exams as required because when it came time to complete the exams, it did so in a way that Relator contends was inconsistent with VA requirements.  SAC, ¶ 192.  But Relator cannot possibly plausibly allege that MSLA intended at the time of the contract bids not to perform the exams as required by the VA.[10]

Relator was a job candidate in October 2017. SAC, ¶¶ 97-98.   He visited the facility and spoke with employees there during just one visit.  *Id.,* ¶ 114-120.  At that time, he was just learning about MSLA's operation.  *Id.*  He does not – and cannot – allege that he participated in MSLA's bid for any contracts or that he has

---

[10]    Although Rule 9(b) allows a Relator to allege scienter generally, it does not absolve him of the requirement to plead plausibly under Rule 8 and *Iqbal*, 556 U.S. 662, 678 (2009).  *Adomitis ex rel. U.S. v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64,66 (9th Cir. 2020).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITES ISO MOTION TO DISMISS SAC

any knowledge of MSLA's contract bidding process or its intent with respect to exams.  *See id.*, ¶¶ 97-98 (describing Relator as expressing interest in learning about MSLA and the potential job in October 2017).   Indeed, his allegations themselves betray a faulty understanding of what the VA actually required or expected.  *See, e.g.,* Dismissal Order at 10:18-25 (describing requirements for ancillary tests).  Any representations made regarding MSLA's intended performance under the contracts occurred years prior to his job application.  *See generally* VA Contracts (ECF No. 39) (showing contracts awarded in 2011 and 2016).  His own allegations in the SAC indicate that by December 2017 – just two months after Relator was interviewing for a job at MSLA – the VA stopped sending exam requests to the company and MSLA wound down performance.  *See* SAC, ¶ 190; *see also* Gonzales Decl., Ex. 2 at 5.  Relator cannot plausibly allege knowledge of MSLA's intent regarding performance of exams years prior to his job interview.

Relator has not and cannot plausibly plead promissory fraud in this case.  For all the reasons described above, Relator's fraudulent inducement claim (Count 3) should be dismissed.

///

///

///

///

///

///

///

///

///

///

## VI.   **CONCLUSION**

Relator has not remedied the fundamental defects in his complaint.  He has, at most, alleged that MSLA breached its contracts with the VA, and re-purposed Government reports in search of a cognizable claim.  But Rules 8 and 9(b) require far more, as does the FCA itself.  He simply has not been able to save his claims by amendment nor will he be able to if permitted to amend yet again.  Therefore, MSLA respectfully requests that the Court dismiss the entire action with prejudice.

Dated:   January 11, 2022              HOGAN LOVELLS US LLP


By: */s/ Stephanie Yonekura*
Stephanie Yonekura
Michelle Roberts Gonzales
Attorneys for Defendants